NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION,<br><br>                Plaintiff-Applicant,<br><br>v.<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>                Defendant. | No. 08-01789 (CGM)<br><br>SIPA LIQUIDATION<br><br>(Substantively Consolidated) |
| In re:<br><br>BERNARD L. MADOFF,<br><br>                Debtor. | |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>                Plaintiff,<br><br>v.<br><br>SNS Bank N.V. and SNS Global Custody B.V.,<br>                Defendants. | Adv. Pro. No. 12-01046 (CGM) |

**MEMORANDUM DECISION DENYING DEFENDANTS MOTION TO DISMISS**

**A P P E A R A N C E S :**

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
By:    David Sheehan, Esq. (on the papers)


*Counsel for Defendants SNS Bank N.V. and SNS Global Custody B.V.*

WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, New York 10007
By:    George W. Shuster, Jr., Esq. (on the papers)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendants, SNS Bank N.V. ("SNS Bank") and SNS Global

Custody B.V. ("SNS Global" and together with SNS Bank "Defendants"), motion to dismiss the

complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff

Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly

consisting of BLMIS customer property.  Defendants seek dismissal for lack of personal

jurisdiction; for improperly using adoption by reference; and for failure to allege that they

received BLMIS customer property.  Defendants also assert the affirmative defense contained in

the safe harbor provision of the Bankruptcy Code as well as that it gave "value," in "good faith,"

and "without knowledge of voidability" of the transfers it received.  For the reasons set forth

herein, the motion to dismiss is denied in its entirety.

## Jurisdiction

This is an adversary proceeding commenced in this Court, in which the main underlying

SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The

SIPA Proceeding was originally brought in the United States District Court for the Southern

District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L.*

*Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court.

This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1),

and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§ 1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order, Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by the Defendants and will be discussed *infra*.

## Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its SIPA proceeding. *See Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 178–83 (2d Cir. 2021), *cert. denied sub nom. Citibank, N.A. v. Picard*, 142 S. Ct. 1209, 212 L. Ed. 2d 217 (2022).

This adversary proceeding was filed on February 9, 2012. (Compl., ECF[1] No. 1). Via the Complaint ("Complaint"), the Trustee is seeking to recover a total of "$74,468,402 in subsequent transfers of Customer Property made to the SNS Defendants . . . ." (*Id.* ¶ 2). Fairfield Sentry Limited ("Fairfield Sentry") is the initial transferee, having received approximately $3 billion from BLMIS. (*Id.* ¶ 35–41). Fairfield Sentry, allegedly, subsequently transferred BLMIS customer property to the Defendants either directly or indirectly through Fairfield Sigma Limited ("Fairfield Sigma") and Fairfield Lambda Limited ("Fairfield Sentry Limited"). (*Id.* ¶ 42–48). The Trustee seeks to recover approximately $21,060,551 in BLMIS' customer property transferred to Defendants from Fairfield Sentry; approximately $41,540,402 in BLMIS' customer property transferred to Defendants from Fairfield Sigma; and

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01046-cgm.

approximately $11,867,009 in BLMIS' customer property transferred to Defendants from Fairfield Lambda. (*Id.* ¶ 50).

Defendants are Dutch public limited companies that maintain places of business in the Netherlands. (*Id.* ¶¶ 22–23). Fairfield Sentry was a BVI company that had direct customer accounts with BLMIS's investment advisory business. (*Id.*). "Fairfield Sentry maintained in excess of 95% of its assets in its BLMIS customer accounts." (*Id.*). "Some of the subsequent transfers from Fairfield Sentry came through Fairfield Sigma and Fairfield Lambda, which each invested 100% of their assets in Fairfield Sentry." (*Id.* (cleaned up)).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda (collectively the "Feeder Funds"), to avoid and recover fraudulent transfers of customer property in the amount of approximately $3 billion. (*Id.* ¶ 36). In 2011, the Trustee settled with the Feeder Funds. (*Id.* ¶ 41). As part of the settlement, Fairfield Sentry consented to a judgment[2] in the amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million to the BLMIS customer property estate. (Compl. ¶ 41). The Trustee then commenced a number of adversary proceedings against subsequent transferees, like Defendant, to recover approximately $3 billion in missing customer property.

In its motion to dismiss, Defendants argue that this Court lacks personal jurisdiction over them; that the Trustee has improperly adopted the Fairfield Sentry complaint by reference; and that he has failed to allege that Defendants received BLMIS customer property. Defendants also assert that their affirmative defenses of "value," "good faith," and "without knowledge of voidability;" and the "safe harbor." The Trustee opposes the motion to dismiss. The parties have waived oral argument on this motion.

---

[2] Consent judgments were also entered against Fairfield Sigma and Fairfield Lambda. (Consent Js., 09-01239-cgm, ECF Nos. 108, 110).

## **Discussion**

**Personal Jurisdiction**

Defendants object to the Trustee's assertion of personal jurisdiction.  In the Complaint, the Trustee argues that Defendants purposefully availed themselves of the laws of the United States and New York.  (Compl. ¶ 6).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2).  *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that "The SNS Defendants . . . knowingly direct[ed] funds to be invested with New York-based BLMIS through Fairfield Sentry, Fairfield Sigma,

and Fairfield Lambda. The SNS Defendants knowingly received subsequent transfers from BLMIS by withdrawing money from Fairfield Sentry, Fairfield Sigma, and Fairfield Lambda, all Fairfield Greenwich Group ('FGG') managed Madoff feeder funds." (Compl. ¶ 6). This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendants in the pre-discovery stage of litigation. At the pre-discovery stage, the allegations need not be factually supported. *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery). That being stated, this was not the only allegation made by the Trustee.

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which the defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picard v. Bureau of Labor Ins. (In re BLMIS)*, 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'" *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

> The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant. First, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct. Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018). "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction." *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up). "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

In the Complaint, the Trustee alleges that Defendants knowingly invested with New York-based BLMIS, via the Feeder Funds. (Compl. ¶ 6). Defendants knew who Madoff was and sought out meetings with him. (Fiel Decl. ex. 21, ECF No. 117 ("Patrick testa[sic] is relentless on this meeting Bernie with SNS.")). The Trustee has alleged that "Defendant SNS Bank also regularly communicated with its FGG account representatives located in FGG's New York City office." (*Id.* ¶ 7; *see, e.g.*, Feil Decl., ex. 17, ECF No. 117 (email chain between an SNS employee and an FGG employee in New York)). Defendants traveled to New York to meet with

FGG executives regarding the investments.  (Feil Decl., ex. 22, ECF No. 117) (email regarding "Visit to New York on Thursday June 24[, 2004] - Confirmed Agenda for SNS Management").

Fairfield Sigma and Fairfield Lambda invested all of their assets in Fairfield Sentry, and Fairfield Sentry, in turn, invested all or substantially all of its assets into the BLMIS Ponzi scheme. (*Id.* ¶¶ 2); (09-01239 Compl. ¶ 228) ("Under Fairfield Sentry's offering memorandum, the fund's investment manager was required to invest no less than 95% of the fund's assets through BLMIS.") (adopted by reference, at paragraph 36, of this Complaint).  Defendants "entered into subscription agreements with Fairfield Sentry and Fairfield Sigma under which they submitted to New York jurisdiction, sent a copy of the agreements to FGG's New York City office . . . ."  (Compl. ¶ 7; *see also* Feil Decl., exs. 1, 2, 6, 8, 9, 12–5, ECF No. 117).  In these agreements, Defendants affirmed that it received and read the fund's information memorandum or private placement memorandum ("PPM").  (*Id.*)  Based on the Fairfield Sentry Private Placement Memorandum, Defendants knew the following facts indicating that it was transacting in New York:

• Fairfield Sentry invested at least 95% of its assets with New York-based BLMIS. (Feil Decl., ex. 10, Sentry Private Placement Memo. at 16, ECF. No. 117).  And Fairfield Sigma and Fairfield Lambda invested primarily with Fairfield Sentry in nontraditional options executing a "split strike conversion" strategy[3] utilized by BLMIS (*Id.*, ex. 3, Lamda Private Placement Memo. at 8; *id.*, ex. 11; *id.*, ex. 11, Sigma Private Placement Memo. at 8; *see also id.*, ex 13, Lambda Infor. Memo. at 8 ("[Fairfield Lambda] seeks to obtain capital appreciation of its assets through nontraditional options trading strategies by investing in FSL, which has established a discretionary account for Sentry at Bernard L. Madoff Investment Securities ('BLM'), a

---

[3] The "split-strike conversion" strategy was BLMIS' purported investment strategy.  (Compl. ¶¶ 25–27; *see also* Feil Decl., ex. 14, Sigma Private Placement Memo. at 20, ECF No. 117 ("The Split Strike Conversion strategy is implemented by Bernard L. Madoff Investment Securities ('BLM') through accounts maintained at that firm.").

registered broker-dealer in New York, New York, which utilizes a strategy described as 'split strike conversion'.").

- "The services of BLM[IS] and its personnel are essential to the continued operation of the Fund, and its profitability, if any." (Feil Decl., ex. 14, Sigma Private Placement Memo. at 8, ECF. No. 117).

- "The services of . . . BLM[IS] are essential to the continued operations of F[airfield] S[entry] L[imited] and the Fund. If their services were no longer available, their absence would have an adverse impact upon an investment in the Fund[4]." *Id.*

- Fairfield Sentry's investment documents indicated that shares would be maintained in U.S. dollars.  (Feil Decl., ex. 15, Sentry Private Placement Memo. at 22, ECF. No. 117).

Defendants also allegedly used New York bank accounts to invest and redeem funds from Fairfield Sentry.  (Feil Decl., exs. 24, 30, ECF. No. 117).  Where a defendant chooses to use a United States bank account to received funds, exercising personal jurisdiction over the defendant for causes of action relating to those transfers is constitutional. *Off. Comm. of Unsecured Creditors of Arcapita v. Bahrain Islamic Bank*, 549 B.R. 56, 71 (S.D.N.Y. 2016); *Bahrain Islamic Bank v. Arcapita Bank (In re Arcapita Bank B.S.C.(C))*, 640 B.R. 604, 618 (S.D.N.Y. 2022) (a bank submits to personal jurisdiction in the United States when it is "free to accept or reject the proposed terms" and still chooses to use a United States bank account); *see also Eldesouky v. Aziz*, No. 11–CV–6986 (JLC), 2014 WL 7271219, at *6–7 (S.D.N.Y. Dec. 19, 2014) (finding jurisdiction under New York long-arm statute based solely on defendant's use of New York account to receive payment at issue: "receiving Plaintiffs' money at a New York bank account suffices to establish personal jurisdiction over [Defendant].") ; *HSH Nordbank AG N.Y.*

---

[4] "Fund" is defined as "Fairfield Sigma Limited."  (Feil Decl., ex. 14, Sigma Private Placement Memo. at iii, ECF. No. 117).

*Branch v. Street*, No. 11 CIV. 9405 DLC, 2012 WL 2921875, at *4 (S.D.N.Y. July 18,

2012)("District courts in this Circuit have upheld personal jurisdiction based upon a defendant's

use of a correspondent bank account in New York where the use of that account was held to lay

at the very root of the plaintiff's action.")(quoting *Licci ex rel. Licci v. Lebanese Canadian Bank,*

*SAL*, 673 F.3d 50, 66 (2d Cir. 2012).); *Dandong v. Pinnacle Performance Ltd.*, 966 F. Supp.2d

374, 382–83 (S.D.N.Y. 2013) (same).

Being sued in a New York court was foreseeable to the Defendants as the Defendants

"entered into subscription agreements with Fairfield Sentry and Fairfield Sigma under which

they submitted to New York jurisdiction." (Compl. ¶ 7).

The Complaint contains allegations that are legally sufficient to constitute a prima facie

showing of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d.

Cir. 2013). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction,

physical entry into the State—either by the defendant in person or through an agent, goods, mail,

or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285

(2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree

in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v.*

*Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendants

alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the Defendants forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts

with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017,

1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came

about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court

need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendants for monies they received from the BLMIS feeder funds. (Compl. ¶¶ 54–58). These allegations are directly related to its investment activities with the Fairfield funds and BLMIS. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over the Defendants is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the

forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

The exercise of jurisdiction is reasonable. Defendants are not burdened by this litigation. Defendants have actively participated in this Court's litigation for over ten years. They are represented by U.S. counsel, held bank accounts in New York, and submitted to the jurisdiction of New York courts' when they signed subscription agreements with the Feeder Funds.[5] The forum and the Trustee both have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

By alleging that Defendants intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS. And

---

[5] Even though this Court held that the Defendants consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendants agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendants is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions."), *aff'd*, *Fairfield Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 3644436, at *9 (S.D.N.Y. Aug. 24, 2022).

by alleging that Defendants used New York bank accounts, the Trustee has met his burden of

alleging jurisdiction over each transfer that received through a New York bank account.

As recognized by the Second Circuit, "[w]hen these [subsequent transfer] investors chose to buy

into feeder funds that placed all or substantially all of their assets with Madoff Securities, they

knew where their money was going." *In re Picard*, 917 F.3d 85, 105 (2d Cir. 2019).  The Trustee

has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds

subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief.  *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A complaint is "deemed to include any written instrument attached to it as an exhibit[,] . . . documents incorporated in it by reference[,]" and other documents "integral" to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted). A document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Defendants by the Feeder Funds.

**Recovery of Subsequent Transfers**

Pursuant to § 550(a) of the Bankruptcy Code, a trustee is entitled to recover avoided transfers of customer property from initial transferees as well as from "any immediate or mediate transferee of such initial transferee." 11 U.S.C. § 550(a). "To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the funds at issue originated with the debtor." *Picard v. BNP Paribas S.A. (In re BLMIS),* 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS (In re Consol. Proc. On 11 U.S.C. § 546(e))*, No. 12 MC 115, 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013). "Federal Civil Rule 9(b) governs the portion of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer." *BNP Paribas*, 594 B.R. at 195 (*citing Sharp Int'l Corp. v. State St. Bank & Trust Co., (In re Sharp Int'l Corp.)*, 403 F.3d 43, 56 (2d Cir. 2005).

The Trustee only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's burden at the pleading stage does not require exact accounting of the funds at issue. *BNP Paribas*, 594 B.R. at 195. Rather "[t]he plaintiff must allege the necessary vital statistics – the who, when, and how much – of the purported transfers to establish an entity as a subsequent transferee of the funds." *Id.* However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. *IBT Int'l Inc. v. Northern (In re Int'l Admin Servs., Inc.)*, 408 F.3d 689, 706-07 (11th Cir. 2005). The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 36). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

> Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded.

*Picard v. Cohmad Secs. Corp.,* (*In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

**Adoption by Reference**

The Trustee has adopted by reference allegations contained in his complaint against the Feeder Funds.  (Compl. ¶ 36).  "Adoption by reference is governed by Rule 10 of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 10(c).  Rule 10(c) states: "A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper.  *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction.  As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action.  446 B.R. 670, 679 (Bankr. E.D. Pa. 2010).  The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c).  *Id.*  Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding.  *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary

proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017); *Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do not constitute different 'cases.'").

Some courts have worried that wholesale incorporation of a pleading can lead to "confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47 (E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a concern in these proceedings. Defendants, like many subsequent transfer defendants in this SIPA proceeding, are aware of what has been filed in the other adversary proceeding in this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See* Stip., ECF No. 96 (dismissing adversary proceeding based on consolidated extraterritoriality ruling).

Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not prejudice the Defendants. If the Court were to dismiss this Complaint and permit the Trustee to amend his Complaint to include all of the allegations that are already contained in the Fairfield Complaint, all parties would be prejudiced by delay in these already, overly-prolonged

proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No.

09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no

time bar on making motions to amend pleadings and permits the amending of pleadings "when

justice so requires.").

Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded,

with particularity, the avoidability of the initial transfer (despite the safe harbor, which will be

discussed in more detail below) due to Fairfield Sentry's knowledge of BLMIS' fraud. (Fairfield

Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS* (*In re Consolidated

Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("[T]he Court directs that

the following adversary proceedings be returned to the Bankruptcy Court for further proceedings

consistent with this Opinion and Order . . . .").

Defendants argue that the wholesale adoption of the Fairfield Complaint violates Federal

Rule of Civil Procedure 8, which requires a "short and plain statement of [a] claim." Fed. R.

Civ. P. 8(a)(2). The Court disagrees. Defendants have been following this and the Fairfield

Sentry chapter 15 case and have been familiar with the allegations contained in the Fairfield

Complaint for over a decade. Indeed, Defendants have been privy to information that this Court

has not seen. Fairfield Sentry has a complicated[6] corporate structure with various insiders many

of whom are alleged to have had knowledge of BLMIS' fraud. The Trustee has to plead nearly

the entire Fairfield Complaint to demonstrate that the initial transfer is voidable. This Court has

reviewed the Fairfield Complaint, in detail, on numerous occasions and there is not much of that

---

[6] In a related adversary proceeding, *Picard v. Fairfield Greenwich Group*, 10-03800-cgm, the Court asked the
parties to provide it with a chart showing the relationships of the Fairfield entities. The Court received three
different charts. *See* Feb. 12, 2021 Hr' Tr. at 51:9-10, *Picard v. Fairfield Greenwich Grp., et al.*, 10-03800-cgm,
ECF No. 158 ("I ask you all for charts and ended up with three.").

document that could be omitted.  Insisting that the Trustee re-allege all of the allegations

contained in the Fairfield Complaint is an unnecessary, dilatory tactic by the Defendant.

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendants have raised the "safe harbor" defense, found in § 546(e), to the Trustee's

allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a

"settlement payment ... made by or to (or for the benefit of) a ... financial institution [or]

financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or]

financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its

terms, the safe harbor is a defense to the avoidance of the *initial* transfer."  *Picard v. BNP*

*Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original).

Where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of

certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e)

defense against recovery of the initial transfer.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No.

08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug.

6, 2021).

On the issue of the safe harbor, the Court adopts the district court's reasoning in: *Picard*

*v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767

(S.D.N.Y. Nov. 3, 2022).

The Trustee has alleged that Fairfield Sentry knew the payments it received from BLMIS

were neither settlement payments nor payments in connection with a securities contract.  "The

safe harbor was intended, among other things, to promote the reasonable expectations of

legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had

no reasonable expectation that he was signing a contract with BLMIS for the purpose of trading

securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

The district court determined that "those defendants who claim the protections of Section 546(e) through a Madoff Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied."  *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013); *see also Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022) ("[I]n circumstances in which a transferee was complicit in Madoff Securities' fraud, Section 546(e) d[oes] not apply as a matter of its express terms.").

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit.  *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e).").

This Court has already determined that the Fairfield Complaint[7] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud"). In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities and options trading volumes were impossible. They knew that BLMIS reported impossible, out-of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

---

[7] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options counterparties. They knew their clients and potential clients raised numerous due diligence questions they would not and could not satisfactorily answer. They knew Madoff would refuse to provide them with honest answers to due diligence questions because it would confirm the details of his fraud.  They knew Madoff lied about whether he traded options over the counter or through the exchange. They knew they lied to clients about BLMIS's practices in order to keep the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's direction.").

 "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court determined that the Fairfield Complaint is replete with allegations demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  Where § 546(e) does not "embrace the initial transfer, the subjective knowledge of a subsequent transferee cannot retroactively render it applicable." *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *7 (S.D.N.Y. Nov. 3, 2022).  The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

In *Fairfield III*, this Court applied the safe harbor to redemption payments made by Fairfield Sentry to its shareholders.  *Fairfield III* is inapplicable in this case for two reasons.

First, and most obviously, *Fairfield III* is a holding in Fairfield Sentry's chapter 15 case, which is not binding on the Court in this adversary proceeding; whereas the district court's decision in *SIPC v. BLMIS (In re Consolidated Proceedings on 11 U.S.C. § 546(e))*, No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013), which holds that the safe harbor does not apply in this case, is binding on the Court on this issue.  Second, the issue in *Fairfield III* is not comparable.  The Court found that the plaintiffs had not met their pleading burden and were not permitted to amend their complaints.  *Fairfield III*, 2020 WL 7345988, at *9 (Bankr. S.D.N.Y. Dec. 14, 2020) ("[T]he Citibank Complaint ***alleges*** that the [Fairfield] Funds were duped, believing that their BLMIS investments were worth what the BLMIS monthly statements showed. The Funds were the transferors and if they were duped, they could not have intended to 'hinder, delay or defraud' the Funds' other creditors by redeeming investments at prices they believed to be accurate.") (emphasis added).  In *Fairfield III*, Fairfield Sentry was the initial transferor, not the initial transferee as it is here.  And the Court did not rule on whether the "knowledge exception" to the safe harbor applied.  Here, the Trustee has sufficiently plead Fairfield Sentry's actual knowledge that BLMIS was not trading securities.

Whether the safe harbor applies to the initial transfers under the theory that BLMIS' transfers to the Feeder Funds were made in connection with the Feeder Fund's contracts with Defendants (rather than a contract with BLMIS) is not answerable on the pleadings.  If such a fact-specific determination is needed, the Court will make it with the benefit of a "full factual record."  *Picard v. Multi-Strategy Fund Ltd.* (*In re BLMIS*), No. 22-CV-06502 (JSR), 2022 WL 16647767, at *9 (S.D.N.Y. Nov. 3, 2022).

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendants argue that the safe harbor governs their relationship with Fairfield Sentry. The safe harbor cannot be used to prevent the Trustee from avoiding the subsequent transfer between the Feeder Funds and Defendants on account of the securities contracts between the Feeder Funds and Defendants.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e) (failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

**BLMIS Customer Property**

The Trustee has pleaded that "[t]he SNS Defendants received the Fairfield Sentry Subsequent Transfers, totaling approximately $21,060,551; the Fairfield Sigma Subsequent Transfers, totaling the equivalent of approximately $41,540,842; and the Fairfield Lambda Subsequent Transfers, totaling the equivalent of approximately $11,867,009." (Compl. ¶ 50). Exhibits C, E, and G to the Complaint provide Defendants with the exact date and amount of each transfer the Trustee is seeking to recover. These exhibits provide Defendants with the

"who, when, and how much" of each transfer. *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018).

Defendants also argue that the Trustee is seeking to recover approximately $2 billion more in subsequent transfers from Fairfield Sentry than was originally alleged to have been transferred to Fairfield Sentry by BLMIS. It is alleged that Fairfield Sentry received only $3 billion in transfers from BLMIS. Yet, if one were to total all of the alleged subsequent transfers across all of these BLMIS adversary proceedings, the Trustee has alleged that Fairfield Sentry paid out approximately $5 billion.

In order to determine how Fairfield Sentry spent the billions of dollars it received from BLMIS, this Court would need review financial documents in order to trace the monies to all of Fairfield Sentry's principals, insiders, creditors, and customers. Undoubtedly, the Court will trace and calculate how Fairfield Sentry spent its BLMIS (and any non-BLMIS) funds at a later stage of litigation. At this stage, the Trustee need only assert allegations that make it seem plausible that Defendants received BLMIS monies.

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS. (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS."). The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property. In this case, the Trustee is not seeking to collect $5 billion from Defendants. He is seeking approximately $$74,468,402.00, which easily could come from the $3 billion Fairfield received from BLMIS. If the Court were to accept Defendants argument, it would need to do one of two things: 1) dismiss ALL of the Trustee's

subsequent transfer claims in all of the adversary proceedings since the Court has no idea which transfers came from BLMIS customer property; or 2) hold a pre-discovery trial on all of the subsequent transfers actions to determine which transfers were made from the $3 billion of BLMIS customer property and which were not. The Court is simply not willing to have such a trial at this stage of litigation.

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Defendants received customer property because the Feeder Funds did not have other property to give. The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

**Whether Defendants took the transfers for value, in good faith, and without knowledge of the voidability of the initial transfers?**

The Defendant has raised the "good faith defense" under § 550(b), arguing that this Court should dismiss the Trustee's complaint because it took "for value" and "in good faith." "An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). "Not only must the facts supporting the defense appear on the face of the complaint, but, as with all Rule 12(b)(6) motions, the motion may be granted only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (cleaned up). A "plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the [affirmative] defense." *Id.*

### i.  *Good Faith*

Where, in light of surrounding circumstances, a transferee should have known of the

debtor's precarious financial condition, the transferee will be deemed to have taken in bad faith,

unless an investigation into the debtor's financial condition actually discloses no reason to

suspect financial trouble.  2 Bankruptcy Desk Guide § 19:105.  The District Court recently

explained that good faith is a fact-intensive inquiry that almost always requires a trial: "The

Second Circuit made clear in its decision in [*Picard v.*] *Citibank*[*, N.A. (In re BLMIS)*, 12 F.4th

171 (2d Cir. 2021), *cert. denied* No. 21-1059 (Feb. 28, 2022)] that the inquiry notice standard

requires a 'fact-intensive inquiry to be determined on a case-by-case basis, which naturally takes

into account the disparate circumstances of differently-situated transferees.'"  *In re BLMIS, LLC*,

Dec. & Order, 20-cv-02586(CM) (May 2, 2022).  And that "such a fact-based determination can

only be made based on the entirety of the factual record after discovery . . . ."  *Id.* (internal

quotation omitted).

The burden of proving good faith falls squarely on Defendants and this Court cannot

make a determination on Defendants affirmative defense until after a fact-intensive inquiry.

Discovery is required on this issue.

### ii.  *Knowledge of the Voidability*

Good faith is linked with whether one had knowledge of the voidability of the transfer.

*Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171, 189 (2d Cir. 2021) ("[A] transferee does

not act in good faith when he has sufficient actual knowledge to place him on inquiry notice of

the debtor's possible insolvency."), *cert. denied sub nom. Citibank, N.A. v. Picard*, 212 L. Ed. 2d

217, 142 S. Ct. 1209 (2022).  Having determined that "good faith" cannot be found on the face of

a complaint, the Court must deny the Defendants motion on this element.  Additionally, §

550(b)(1) provides a defense to recovery making lack of knowledge Defendants burden to plead

and prove.  It is a fact-intensive inquiry that requires a three-step inquiry into 1) what Defendants

subjectively knew; "whether these facts put [Defendants] on inquiry notice of the fraudulent

purpose behind a transaction—that is, whether the facts the transferee knew would have led a

reasonable person in the [Defendants'] position to conduct further inquiry into a debtor-

transferor's possible fraud; and whether "diligent inquiry by [Defendants] would have

discovered the fraudulent purpose of the transfer." *Id.* at 192.

### iii.  *For Value*

The "value" that a subsequent transferee must provide is "merely consideration sufficient

to support a simple contract, analogous to the 'value' required under state law to achieve the

status of a bona fide purchaser for value." *Picard v. Legacy Capital Ltd.* (*In re BLMIS*), 548

B.R. 13, 37 (Bankr. S.D.N.Y. 2016) (citation omitted); *accord Enron Corp. v. Ave. Special

Situations Fund II, L.P.* (*In re Enron Corp.*), 333 B.R. 205, 236 (Bankr. S.D.N.Y. 2005). In

addition, the "value" element under § 550(b)(1) looks to what the transferee gave up rather than

what the transferor received.  The Complaint contains no mention of Defendants' exchanging

shares for consideration.  Therefore, the "value" defense is not asserted on the face of the

Complaint.

Defendants argue that the payments it received f were given in exchange for the

redemption of shares in the Feeder Funds.  If Defendants knew at the time they redeemed their

shares that the shares were worthless, then they did not receive the subsequent transfer funds "for

value" as is required under § 550. *See Fairfield Sentry Ltd. v. Theodoor GGC Amsterdam (In re

Fairfield Sentry Ltd.)*, 596 B.R. 275, 301 (Bankr. S.D.N.Y. 2018), *aff'd sub nom. Fairfield

Sentry Ltd. v. Citibank, N.A. London*, No. 19-CV-3911 (VSB), 2022 WL 4391023 (S.D.N.Y.

Sept. 22, 2022) ("The only exception concerns the Knowledge Defendants that received

redemption payments with the knowledge that the NAV was wrong. In those circumstances, the Liquidators may seek to impose a constructive trust.").  It has not yet been determined whether Defendants knew if the shares it redeemed from Fairfield Sentry had value.

 "Value" is Defendants burden to plead and prove.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 198 (Bankr. S.D.N.Y. 2018).  Whether the Defendants gave value is a question of fact to be resolved either at the summary judgment stage or at trial.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *9 (Bankr. S.D.N.Y. Aug. 6, 2021).

It is not appropriate for the Court to resolve these factual issues at this stage of the litigation.

### Conclusion

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local Bankruptcy Rule 9074-1(a).



**Dated: March 7, 2023
Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris
U.S. Bankruptcy Judge**